UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23905-CIV-GOODMAN
[CONSENT]

PALS GROUP, INC.,

    Plaintiff,

v.

QUISKEYA TRADING CORP., et al.,

    Defendants.

_____/

## ORDER DENYING PLAINTIFF'S PRELIMINARY INJUNCTION MOTION

Plaintiff Pals Group, Inc., doing business as Lakay Foods ("Plaintiff," "Lakay" or "Pals Group"), filed a Motion for Preliminary Injunction ("Motion"). [ECF No. 28]. Defendants Quiskeya Trading Corporation ("Quiskeya") and Patrick Louissaint ("Mr. Louissaint") (collectively referred to as "Defendants") filed an opposition response. [ECF No. 30]. The Undersigned held an evidentiary hearing on the Motion. For the reasons outlined below, the Undersigned **denies** Plaintiff's Motion.

    A. **Background**

On August 3, 2016, Plaintiff filed an action against Defendants in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [ECF No. 1]. Plaintiff alleged the following: misappropriation of trade secrets (count I); violation of Florida's

1

Deceptive and Unfair Trade Practices Act (count II); common law unfair competition (count III); violation of the Lanham Act, 15 U.S.C. § 1125(a) (count IV); breaches of contract against individual Defendant Louissaint (counts V and VI); breach of fiduciary duty against individual Defendant Louissaint (count VII); equitable accounting (count VIII); and unjust enrichment (count IX). [ECF No. 1]. On September 12, 2016, Defendant removed the action on the basis of original federal question jurisdiction for the Lanham Act count and supplemental jurisdiction for the other claims. [ECF No. 1].

On November 4, 2016, Plaintiff filed the instant Motion seeking a preliminary injunction against Defendants to prevent their allegedly "improper use of [Plaintiff's] confidential and trade secret information that was misappropriated by Louissaint, a trusted fiduciary, while he was still employed by [Plaintiff]." [ECF No. 28, p. 1]. Plaintiff contends that "Defendants are utilizing Lakay's trade secrets to unfairly compete with Lakay's business causing it irreparable harm." [ECF No. 28, p. 1].

The Undersigned held an evidentiary hearing on the preliminary injunction motion which lasted approximately five hours. Four witnesses testified at the hearing: (1) Christopher Dupuy, who is the owner of Pals Group; (2) Manual Manning Salazar, who is an information technology ("IT") professional with an IT sale and services company used by Plaintiff; (3) Karly Fils-Aime, who was a previous partner of Pals Group and was in charge of its marketing and sales; and (4) individual Defendant Patrick Louissaint, who previously worked for Pals Group.

### B. Factual Background

Mr. Dupuy is the owner of Pals Group, which was started in 2005 or 2006. [ECF No. 34, p. 27]. Pals Group is a food import/export distributor dealing in products such as rice, beans, corn meal, tomato paste, and sardines for the Caribbean community living in the U.S. [ECF No. 34, p. 27]. Mr. Louissaint worked as an employee for Plaintiff from February 2008 to July 2012. [ECF No. 34, p. 108]. Mr. Louissaint was hired as an accountant but took on other responsibilities/positions, such as being an assistant, receptionist, and messenger -- and making deposits, purchasing food, and performing IT work. [ECF No. 34, p. 109]. Mr. Louissaint worked for Plaintiff in some capacity through and including April 2016 with access to clients, client lists, price lists and accounting records. [ECF No. 34, pp. 109, 134].

In 2009, Mr. Louissaint started a company named Lakay Discount in Orlando, Florida. It served as a distribution center for Pals Group. [ECF No. 34, p. 110]. Lakay Discount was originally run by Mr. Louissaint's wife until Mr. Louissaint moved from Miami to Orlando to work at Lakay Discount full time. [ECF No. 34, p. 110]. According to Mr. Louissaint, Lakay Discount was opened with the full approval and endorsement of Pals Group. [ECF No. 34, p. 111]. Mr. Dupuy testified that Mr. Louissaint used Pals' Group's credit line to purchase trucks, a warehouse, and other materials and equipment to build that distribution business. [ECF No. 34, pp. 37-39].

Lakay Discount closed and Louissaint became a full-time employee for Plaintiff. [ECF No. 34, p. 117]. A year and a half after working again as an employee of Pals Group, Louissaint was advised that there was a potential buyout of Plaintiff by a company named Iberia. [ECF No. 34, p. 118]. Mr. Louissaint testified that he was advised by an officer of Pals Group that he would not be needed if the Iberia deal went through because Iberia had its own accountant and its own distribution company in Orlando. [ECF No. 34, pp. 118, 122]. Mr. Dupuy testified that Mr. Louissaint decided that he did not want to work for Iberia and instead wanted to run his own business. [ECF No. 34, p. 76].

Ultimately, Mr. Louissaint started the competing business of Quiskeya in July 2015. [ECF No. 34, p. 123]. Mr. Dupuy testified that Mr. Louissaint indicated that the new business would act as an exclusive distributor for Lakay. [ECF No. 34, pp. 56-58]. After starting Quiskeya, Mr. Louissaint continued to do accounting work for Plaintiff for more than a year, through August 2016. [ECF No. 34, p. 124]. After starting Quiskeya, Mr. Louissaint continued to distribute products for Plaintiff. [ECF No. 34, p. 126; Defendant's Hearing Exhibit #7]. Several months after the opening of Quiskeya, Mr. Louissaint testified, Plaintiff expressed a desire to become the Miami distributor for Quiskeya and Mr. Louissaint declined that offer. [ECF No. 34, pp. 133-34].

On October 27, 2016, Defendants sent a Cease and Desist letter to Plaintiff, demanding that it cease the dissemination of false information to existing clients. [ECF

4

No. 34, p. 145; Defendant's Hearing Exhibit No. 1]. Eight days later, on November 4, 2016, Plaintiff filed its Preliminary Injunction Motion. [ECF No. 28]

### C. Legal Standard

Plaintiff's count I, which alleges misappropriation of trade secrets, sets forth a cause of action under the Florida Uniform Trade Secrets Act ("FUTSA"). The parties agree that FUTSA specifically authorizes a party to seek injunctive relief against the actual or threatened misappropriation of trade secrets or confidential information. *See* Fla. Stat. § 688.003. FUTSA provides that the actual misappropriation of trade secrets may be enjoined and that an injunction may continue for a reasonable period of time in order to eliminate the commercial advantage that otherwise would be derived from the misappropriation. Fla. Stat. § 688.003. Plaintiff brings its preliminary injunction request under this FUTSA provision.

The parties also agree on the legal standard for obtaining a preliminary injunction. Plaintiff must establish that "(1) there is a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury exists if an injunction is not granted; (3) the threatened injury to the plaintiff outweighs any harm that an injunction may cause the defendants; and (4) issuing the injunction will not harm the public interest." *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1218 (S.D. Fla. 2014).

A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the "burden of persuasion" as to the four

factors. *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000). Here, Plaintiff carries the burden of persuasion. Granting a preliminary injunction "is the exception rather than the rule." *Id.* (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)).

### D. Analysis

Plaintiff has the burden of establishing the four factors. The Undersigned finds that Plaintiff has failed to satisfactorily demonstrate a substantial likelihood of success on the merits and irreparable harm. Because the Undersigned finds that Plaintiff has failed to establish two of the four factors, it is not necessary to evaluate the remaining two factors.

i. *Substantial Likelihood of Success on the Merits*

The party claiming trade secret protection has the burden to show how the information qualifies as a trade secret. *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012). To prove a claim under FUTSA, a plaintiff must show that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing Fla. Stat. § 688.002).

"To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be

6

the subject of reasonable efforts to protect its secrecy." *Id*. (citing *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law); *Bestechnologies, Inc. v. Trident Envt. Sys., Inc.*, 681 So.2d 1175, 1176 (Fla. 2d DCA 1996) (defining trade secret)); *see also* Fla. Stat. § 688.002(4). But "if the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection." *Del Monte Fresh Produce Co.*, 136 F. Supp. 2d at 1291.

FUTSA defines a "trade secret" as information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4). Thus, if a trade secret is either readily ascertainable or the plaintiff fails to take reasonable efforts to maintain the secrecy of its trade secret, then a misappropriation claim will fail. *See*, e.g., *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, 610 F. App'x 881, 885–86 (11th Cir. 2015) (granting summary judgment for the defendant on a trade secret misappropriation claim where the plaintiff did not take adequate steps to maintain the secrecy of its product).

Here, Plaintiff provided insufficient evidence to satisfy its burden of proof to demonstrate that the relevant information qualifies as a trade secret. For instance, Plaintiff in its motion and during its opening statement at the hearing asserted that its trade secrets include, among other things, its supplier list and customer list. [ECF Nos.

7

28, p. 8; 34, pp. 10-11]. However, Plaintiff, at this stage, has not demonstrated that its supplier list has even been obtained and used by Defendants or that the information comprising his supplier list and customer list was not generally known or easily ascertainable.

Concerning Plaintiff's suppliers, Plaintiff provided testimony that it has suppliers from around the world and that they are selected depending on the quality of products it seeks. Plaintiff's witness, Mr. Dupuy, who is the owner of Pals Group Inc., testified that formulating the supplier list took time and research to find the right balance between quality and price. [ECF No. 34, pp. 28-29]. Further, Mr. Dupuy explained that the company also needed to find the "right suppliers" to grow with Plaintiff. [ECF No. 34, p. 29]. He testified that finding the "right supplier of jasmine rice" took "approximately 10 years." [ECF No. 34, p. 30].

Mr. Dupuy asserted that Defendants have "been going after all of [his] suppliers as well to buy the same products to compete against [Plaintiff]." [ECF No. 34, p. 87].

Defendants subsequently called individual Defendant Louissaint to testify at the hearing. When asked on cross-examination whether he used the same supplier as Plaintiff for five pounds of jasmine rice and twenty pounds of jasmine rice, Mr. Louissaint explained that he did **not** obtain his jasmine rice from the same supplier as Plaintiff. [ECF No. 34, p. 164]. When asked "where did [he] learn of his supplier," Mr.

Louissaint stated that he went to a food show "where all the suppliers were present." [ECF No. 34, p. 164].

Although Plaintiff expressed its suspicion that Defendants were using the identical suppliers Plaintiff had been using for several years, it did not introduce any actual *evidence* to confirm that theory. In fact, the only evidence about the identity of Defendants' suppliers arose during the cross-examination of Mr. Louissaint, who testified, when asked about the source of certain specific products listed on an invoice [Plaintiff's Hearing Exhibit #29], that he used *different* suppliers than the ones used by Plaintiff. So Plaintiff failed to present any evidence demonstrating that Defendants indeed were using the same suppliers (and ordering the same products) as Plaintiff. Instead, there is evidence indicating Mr. Louissaint attended a food show where many suppliers also attended and that he obtained his suppliers there. [ECF No. 34, p. 164].

Accordingly, Plaintiff has failed to demonstrate that Defendants even possess and/or are using its alleged trade secret supplier list. Moreover, Plaintiff has also failed to show, even if they both use the same suppliers, that the information is not readily ascertainable, as Defendants encountered many suppliers at a food show.

Concerning Plaintiff's customers, Plaintiff similarly failed to meet its burden of persuasion and demonstrate that the customer lists are also trade secrets. Plaintiff initially presented testimony describing how creating its customer lists required consistent work. This included visiting each store, sometimes selling small quantities of

its products, providing samples of different products, and preparing packaging. [ECF No. 34, p. 30]. Plaintiff maintains a list of its customers in its QuickBooks program and the list includes the customers, their contact information, and their history of business with Plaintiff. [ECF No. 34, pp. 30-31]. Mr. Dupuy testified that Mr. Louissaint prepared the list. [ECF No. 34, p. 45].

     Mr. Dupuy stated that the primary customers consist of supermarkets that sell products from the Caribbean. [ECF No. 34, p. 69-70]. He testified that "a lot" of these supermarkets can be located by conducting an internet search. [ECF No. 34, p. 70]. Mr. Dupuy stated that this is the case for the larger supermarket chains, but claimed that this cannot be done for his "niche client[s]" that "only buy[] a very specific product from [Plaintiff]." [ECF No. 34, p. 70].

     Mr. Fils-Aime testified that he originally brought to Pals Group his customer list when he joined the company. [ECF No. 34, pp. 98-99]. Mr. Fils-Aime said that ten years ago -- back when Pals Group was created in 2006 -- the list was not easily ascertainable through online research. However, he explained that it is presently easily ascertainble because "[t]oday you go Google online and get the information you need." [ECF No. 34, pp. 99-100]. Mr. Fils-Aime noted that, although the actual customers are easily ascertainable, the particular items purchased and prices paid by those customers are not found on the internet. [ECF No. 34, pp. 105-106].

Additionally, Mr. Fils-Aime testified that Plaintiff did not use any strategy, specialized training, or system to develop or create a separate customer list. [ECF No. 34, p. 99]. He does not recall any steps or procedures taken by Plaintiff to make Pals Group's customer list a trade secret. [ECF No. 34, p. 101].

Mr. Louissaint testified that the customers can be determined by using the internet. He stated that anyone could go to manta.com or yelp.com and look for Caribbean grocery stores in a particular city and find relevant supermarkets that are potential customers. [ECF No. 34, p. 135]. He also testified that supermarket websites and store flyers include their other locations and contact information. [ECF No. 34, pp. 135-36]. Mr. Louissaint also noted that Plaintiff did not take measures to protect its customer list and the list was emailed regularly to its employees and salespeople. [ECF No. 34, p. 136].

Mr. Louissaint said that prices offered to customers are not available on the internet, but they can easily be calculated by factoring in the knowledge that supermarkets' sale prices are approximately 35% higher than the cost. [ECF No. 34, p. 158].

The Undersigned finds that Plaintiff has failed to establish that the customer list is a trade secret. Instead, the evidence presented shows that customer lists similar to Plaintiff's are easily ascertainable. In fact, each hearing witness who works or worked

for Plaintiff testified that the customers could be identified by simply conducting an internet search -- this even includes Mr. Dupuy, the owner of Pals Group.

Plaintiff has not established a likelihood of success on the merits because it failed to demonstrate that Defendants misappropriated its trade secrets. In fact, Plaintiff at this stage has failed to demonstrate that it even had a valid trade secret for Defendants to misappropriate.

Because the Undersigned finds that Plaintiff has not established a likelihood of success on the merits, I am compelled to deny its request for a preliminary injunction. *See Dawson v. Ameritox, Ltd.*, 571 F. App'x 875, 879-80 (11th Cir. 2014) (agreeing with district court's order denying the request for a preliminary injunction because the party failed to demonstrate a substantial likelihood of success on the merits and stating that, because the party failed to meet likelihood of success, the district court did not need to address the other requirements for obtaining injunctive relief). Although, the Undersigned's analysis could end here, I have chosen to also evaluate the irreparable harm prong.

To be sure, Plaintiff "may very well prevail in the present action in the end," but its failure to establish **likelihood** of success necessarily means it has failed to carry its burden of demonstrating that the extreme remedy of a preliminary injunction is appropriate here. *Oce N. Am, Inc. v. Caputo*, 416 F. Supp. 2d 1321, 1325 (S.D. Fla. 2006).

12

      ii.     *Irreparable Harm*

"[P]reventing irreparable harm in the future is the *sine qua non* of injunctive relief." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1133 (11th Cir. 2005) (internal quotation omitted). Plaintiff's delay in moving for a preliminary injunction significantly undermines any finding that it might suffer irreparable injury if an injunction does not issue. Plaintiff waited one year after finding out that Quiskeya was a competing business and three months after filing its Complaint before filing its preliminary injunction motion. [ECF Nos. 1; 28; 34, pp. 80-81]. Plaintiff presented no evidence to justify this delay. Rather, Plaintiff stated that when it learned of the competition by Quiskeya, "I had another client and issues I needed to take care of in Miami. I decided I can choose my battles." [ECF No. 34, p. 80].

"A delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on the merits." *Id.* (citations omitted). An "unexplained delay undercuts any sense of urgency" and can lead a court to find that the plaintiff "has failed to demonstrate sufficient need for a preliminary injunction." *See Seiko Kabushiki Kaisha v. Swiss Watch Intern., Inc.*, 188 F. Supp. 2d 1350, 1355-56, (S.D. Fla. 2002).

Other courts (both in and outside the Eleventh Circuit) have held that unexplained delays of a few months negate any claim of irreparable harm on a preliminary injunction motion. *Id*. As one court stated: "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); *see, e.g.*, *Magnet Commc'ns, LLC v. Magnet Commc'ns, Inc.*, No. 00-civ-5746, 2001 WL 1097865, at *1 (S.D.N.Y. Sept. 19, 2001) (denying preliminary injunction in face of three-month delay); *Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 408-09 (S.D.N.Y. 2000) (denying preliminary injunction in face of four-month delay).

"[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights." *Seiko Kabushiki*, 188 F. Supp. 2d at 1355. Therefore, a plaintiff concerned about a harm truly believed to be irreparable would and should act swiftly to protect itself. Here, however, Plaintiff sat on its rights for three months. Further, Plaintiff has failed to offer any explanation for its three-month delay and the Undersigned cannot discern from the record any valid justification for the delay. *See Wreal*, 840 F.3d at 1248. Accordingly, Plaintiff's delay is by itself sufficient grounds to deny its request for an injunction.

In any event, Plaintiff has shown no risk that it will suffer any compensable harm (much less the required *irreparable* harm) if a preliminary injunction does not issue. In fact, the evidence presented by Plaintiff at the evidentiary hearing demonstrated the

14

exact opposite scenario. Mr. Dupuy testified that the business, rather than suffering any compensable or irreparable harm, has in fact been "profitable all year long." [ECF No. 34, pp. 85-86]. This testimony is even more striking after hearing that Plaintiff was not profitable in 2014 and 2015. [ECF No. 34, p. 86]. Mr. Dupuy further cemented the lack of necessity for an injunction by confirming that the business had been profitable through 2016 even with Quiskeya "doing business competing against [Plaintiff] in Orlando and Miami." [ECF No. 34, p. 86].

When asked what damages Defendants have caused to Plaintiff, Mr. Dupuy stated that Defendants have kept his Orlando clients' information, gone after his distributors, presented themselves as Plaintiff, offered lower prices than Plaintiff to gain business, sought his suppliers, and bought the same products. [ECF No. 34, p. 87].

However, Plaintiff already established that these alleged actions have not caused compensable or irreparable harm. Instead, Plaintiff has seen a profit during the last year, when it experienced loses the previous two years. Moreover, Plaintiff did not present evidence of a loss in customers, clients or revenue. Even if it had presented this type of evidence, then its remedy would be money damages. As such, as currently presented by Plaintiff, any injury is compensable and therefore not irreparable. *Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) *rev'd on other grounds* 508 U.S. 656 (1993) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies"); *see also United States v. Jefferson*

*Cty.*, 720 F.2d 1511, 1520 (11th Cir. 1983) (affirming denial of preliminary injunction and noting that plaintiff firefighters, even if they were to prevail, would not have suffered an injury that could not be adequately compensated through an award of back pay and seniority points along with compelled future promotion).

Accordingly, the Undersigned finds that Plaintiff also failed to satisfy the irreparable harm factor (in addition to not meeting the likelihood of success on the merits requirement).

### E. Conclusion

Plaintiff failed to satisfy two of the four factors required for a preliminary injunction. Accordingly, the Undersigned **denies** Plaintiff's preliminary injunction motion.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on February 9, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record