UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-23905-CIV-GOODMAN
[CONSENT CASE]

PALS GROUP, INC.,

    Plaintiff,

v.

QUISKEYA TRADING CORP., et al.

    Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION TO STRIKE SHAM DECLARATION AND DAMAGES REPORT

Defendants Quiskeya Trading Corp. and Patrick Louissaint move to strike as a sham Christopher Dupuy's declaration and a damages expert report attached to the declaration, both of which Plaintiff Pals Group, Inc. relies on to oppose Defendants' partial summary judgment motion. [ECF Nos. 60-1; 64]. Pals Group filed an opposition response. [ECF No. 66]. Defendants did not file a reply.

For the reasons explained below, the Undersigned **denies** the motion to strike.

**I.    Background**

Dupuy owns Pals Group, an import/export distributor of various food products for the Caribbean community living in the United States. For several years, Louissaint worked for Pals Group in various capacities, including as an accountant. According to

Pals Group, by virtue of his employment, Louissaint became privy to Pals Group's proprietary information, which he then wrongly used to form two competing businesses at two different times. That led Pals Group to sue Louissaint and Quiskeya (the second allegedly competing company) under various legal claims, which are pending before this Court.

Defendants have moved for partial summary judgment on several of the claims and filed a statement setting forth what they consider to be the material, undisputed facts. [ECF Nos. 52; 54]. The statement relies heavily on testimony given at an evidentiary hearing that this Court held on Pals Group's motion for preliminary injunction. [ECF No. 34].

Pals Group filed an opposition response and a counter-statement of facts that, Pals Group says, create genuine issues of fact for the jury to consider at trial. [ECF Nos. 60–61]. Pals Group's statement also relies heavily on the testimony given at the preliminary injunction evidentiary hearing. But, in addition, Pals Group relies on a declaration signed by its owner, Dupuy, which is attached to the statement. [ECF No. 60-1, pp. 1–6]. The declaration, in turn, attaches the expert report of Pals Group's financial expert, who opines on Pals Group's damages. [ECF No. 60-1, pp. 7–22].

Defendants move to strike Dupuy's declaration and the expert report on the grounds that they contradict Dupuy's testimony before the Court at the preliminary injunction hearing. To be precise, Defendants submit that four different statements

within Dupuy's declaration impermissibly contradict the prior testimony. Pals Group disagrees, arguing that the challenged statements, at worst, further explain or expand upon the prior testimony.

**II. Legal Standard**

Under "limited circumstances," a court may, as it evaluates a summary judgment motion, "disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). The so-called "sham affidavit" rule "operates in a limited manner to exclude unexplained discrepancies and inconsistencies." *Id.* It does not, on the other hand, exclude inconsistencies that simply "create an issue of credibility or go to the weight of the evidence." *Id.* Moreover, the rule must be used "sparingly because of the harsh effect it may have on a party's case." *Id.*

As shown above, binding Eleventh Circuit precedent on the "sham affidavit" rule speaks of "prior *deposition* testimony." *Id.* (emphasis added). Defendants, by contrast, argue here that Dupuy's declaration is a sham because it contradicts his prior testimony at an *evidentiary hearing*. No party flags this potential distinction (between deposition testimony and testimony at a hearing) or discusses whether the difference could have legal consequences. Independent research has revealed at least one decision, by Magistrate Judge John O'Sullivan, finding that the "sham affidavit" rule applies with

3

equal force to prior sworn testimony given at a hearing as it does to prior sworn testimony given at a deposition. *See Hill v. Lazarou Enters., Inc.*, No. 10-61479-CIV, 2011 WL 1331272, at *15 (S.D. Fla. Mar. 17, 2011) ("The undersigned sees no reason to distinguish between sworn testimony at an unemployment hearing and sworn testimony at a deposition.") (citing *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003) (applying the "sham affidavit" rule where affidavit allegedly contradicted prior sworn statement given to police)).

This potential issue, however, will not be addressed here because the Court finds that the challenged statements do not actually **contradict** prior testimony -- and therefore should not, as a threshold matter, be struck under the "sham affidavit" rule.

## III. Analysis

### A. *First Statement*

Defendants first focus on paragraph 10 of Dupuy's declaration, which states:

> I testified at the hearing on Pals Group's motion for preliminary injunction that "I hoped" Mr. Louissaint and his company would pay their debt back to Pals Group. To be clear, this testimony was not meant to convey that Mr. Louissaint and his company had the option to pay or not pay – there was (and remains) an express agreement (now breached) by Mr. Louissaint to re-pay the debt incurred. Instead, my testimony was meant to convey that I was hopeful that what has happened would not happen again – that is, that Mr. Louissaint and his company would be unable to repay their debt, or deliberately avoid it.

[ECF No. 60-1, p. 3].

Defendants argue that this statement contradicts the following testimony Dupuy

4

gave at the preliminary injunction hearing:

> I told him [Louissaint] I think it makes sense for you to keep on doing business. Those trucks are not worth anything to me, but to you they are worth something for you to keep doing business and, then, hopefully, eventually, can pay me back what you owe me.
>
> ***
>
> I told him [Louissaint], [w]ell, then let's do this. Take back the trucks, because to me, and if I do this merger with Iberia, if it goes through, those trucks are worthless to me, but you need them to keep alive.

[ECF No. 34, pp. 40:25–41:4, 53:5–8].

Defendants do not explain how this testimony contradicts paragraph 10 of Dupuy's declaration. Rather, Defendants place the statement and testimony side-by-side and simply say, in a wholly conclusory way, that they contradict, as if it were an obvious and firm conclusion. But the Court does not find that to be the case.

In paragraph 10 of his declaration, Dupuy is not contradicting his prior testimony. Instead, he is expanding upon it by explaining its meaning. Dupuy explains that when he testified that he "hoped" Defendants would pay back their debt, he was merely expressing optimism (and not that no contract was actually in place). The word "hope" does not mean that no obligation existed. Defendants may well disagree with that explanation, but the distinction gives them fodder for vigorous cross examination.

As such, the Court will not strike paragraph 10 of Dupuy's declaration.

**B.** *Second Statement*

Next, Defendants point to a portion of paragraph 15 of Dupuy's declaration that

5

reads: "Pals Group has sustained further damages due to its inability to access its customer and supplier data and information maintained in the QuickBooks system as a result of Mr. Louissaint's refusal to provide access to this information." [ECF No. 60-1, p. 3]. Defendants maintain that this portion of the declaration contradicts Dupuy's prior testimony during the following exchanges:

> Q. And Mr. Louissaint, as far as you know, has he returned the administrator rights to the QuickBooks system?
>
> A. For Orlando? No. But Miami, yes.
>
> ***
>
> Q. So the contacts and the clients that Mr. Louissaint gathered while working for Lakay Discount, is it your position that those contacts and that customer list is yours or that it's Mr. Louissaint's?
>
> A. Well, they were maybe his at the time.

[ECF No. 34, pp. 41:25–42:2, 75:8–12].

In its opposition response, Pals Group explains that the QuickBooks information for Miami was returned only recently, in 2016, and that, although the return "made the bleeding stop," it did not erase the past "wound" it suffered or the damage that flowed from it. [ECF No. 66, p. 4]. Pals Group also explains that it remains without access to the QuickBooks information for Orlando, adding to its damages.

In addition, regarding testimony about who owns contacts and customer lists, Pals Group adds that Defendants omitted a portion of Dupuy's testimony, *which starts on the next line*, where he says that the contacts and customer lists later became Pals

6

Group's property. [ECF No. 34, p. 75:13–17 ("Q. Okay. And is it your position that they then became Pals Group at one time? A. When I financed him, yes, for all those years and I have to absorb him and it was my QuickBooks file that was doing the accounting. That QuickBooks file belongs to me, ma'am.").

Because they filed no reply, Defendants do not challenge Pals Group's explanation.

The Court finds that Dupuy's statements in his declaration and at the hearing about lack of access to QuickBooks do not contradict each other. The portion of the declaration Defendants focus simply says, in a general manner, that Pals Group suffered damages because Louissaint did not give it access to QuickBooks. Dupuy's previous testimony is that, unlike the Orlando information, the Miami information was returned, but does not say when. There is no contradiction there; as Pals Group explains, the total lack of return of Orlando information and the delayed return for Miami information caused it damage.

Moreover, Defendants' second quotation from the hearing (i.e., that Louissaint "maybe" owned the contacts and customer list at the time he gathered them), does not expressly contradict Dupuy's later statement that Pals Group suffered damages because it could not access QuickBooks. And to the extent that Defendants are attempting to show an *implied* contradiction -- that Pals Group could not suffer damages from lack of access to QuickBooks because it did not own the contacts and customer lists to begin

7

with -- the Court is not convinced. In response to the very next question during the preliminary injunction hearing, Dupuy testified that, at some point, the QuickBooks became the property of Pals Group (or him individually). Although Defendants likely disagree, that distinction and arguable inconsistency is a credibility issue to be explored on cross examination.

In short, the Court will not strike paragraph 15 of Dupuy's declaration.

C. *Third Statement*

Defendants next challenge paragraph 23, a portion of paragraph 25, and paragraph 26 of Dupuy's declaration, in which he states the following:

> In short, the trade secret data compiled by Pals Group in its customer and supplier lists permitted Pals Group to operate within the specific parameters required for Pals Group to be profitable.
>
> \*\*\*
>
> Pals Group has sustained significant damages as a result of Mr. Louissaint's and Quiskeya's competing business, which has depressed Pals Group's sales.
>
> \*\*\*
>
> As reflected in my financial report, these damages total $951,263.00.

[ECF No. 60-1, pp. 5–6].

Defendants submit that this testimony contradicts some of Dupuy's responses during the preliminary injunction hearing regarding Pals Group's profitability:

> Q. What is the financial standing of Pals Group as -- as we sit here today? And I'm not looking for specific numbers. But is it a profitable corporation

or is it nonprofitable [sic] -- is it not profitable?

A. It's profitable all yearlong [sic].

Q. It's improfitable [sic] -- what about 2015, did you -- did you make a profit in 2015?

A. Ask my accountant. He is there.

Q. We will. I'm asking you, and if you don't know, that's perfectly acceptable.

A. No, it was not.

Q. It was not profitable in 2015. What about in 2014?

A. I don't think so.

Q. Okay. But you said, as you sit here today, almost at the end of 2016, it is profitable, correct?

A. Yes.

Q. With Quiskeya doing business competing against you in Orlando and Miami, correct?

A. Yes.

[ECF No. 34, pp. 85:21–86:14].

The Court again disagrees with Defendants that an impermissible contradiction exists, for several reasons. First, Dupuy's previous testimony is solely about whether Pals Group had a profit in various years. It does not discuss *what* is needed for there to be a profit, such as "the trade secret data compiled by Pals Group in its customer and supplier lists," which is what Dupuy says in paragraph 23 of his declaration. [ECF

No. 60-1, p. 5]. Thus, there is no contradiction because Dupuy is talking about two different things: whether Pals Group needed certain data to be profitable, and what years Pals Group was profitable.

Second, Dupuy's testimony that Pals Group was not profitable in 2014 or 2015 does not contradict his later sworn statement that Pals Group suffered damages due to Defendants' competition. Lost profits are a natural measure of damages in commercial disputes. Nor is there a contradiction by the fact that Pals Group *was* profitable in 2016. As Pals Group explains in its opposition response (to which Defendants did not reply), the profit was solely due to an unrelated venture, absent which, Pals Group would not have been profitable. In other words, Pals Group argues that, but for Defendants' wrongful acts, it would have earned *more* profits. While that will likely be a point of contention on the merits, it is not a basis for striking Dupuy's declaration.

Third, Dupuy's previous testimony (at least the portion Defendants focus on) does not set forth any measure of damages. Nor does it say that Pals Group suffered no damages. Therefore, it does not contradict Dupuy's later statement that Pals Group suffered $951,263.00 in damages.

Accordingly, the Court will not strike the challenged portions of paragraphs 23, 25, and 26 of Dupuy's declaration.

D.   *Fourth Statement*

Lastly, Defendants seek to strike the second portion of paragraph 25 of Dupuy's

declaration, in which he states: "Furthermore, as a result of not being able to access its QuickBooks data, Pals Group has had to operate without the majority of its supplier and customer information, and has had to expend significant time and expense in order to even attempt to recreate all of the historical information." [ECF No. 60-1, p. 5]. Defendants argue that this statement contradicts Dupuy's earlier testimony (already discussed above) that Louissaint had returned the administrator rights for the QuickBooks system in Miami, but not Orlando, as well as other testimony in which he denied having "taken active, forward-moving steps in order to retain customers of Quiskeya in Orlando." [ECF No. 34, p. 85:18–20].

The Court sees no contradiction here either. Dupuy testified that Pals Group received the Miami data after a delay and the Orlando data not at all. Testimony about the delayed access to information for one area and complete lack of access to information for another area does not contradict Dupuy's later statement that, *because* of the missing information, Pals Group had to spend significant time and money to recreate it. If anything, the statements are entirely *consistent* with one another.

The challenged declaration statement is likewise not contradicted by Dupuy's earlier admission that Pals Group took no steps to retain Quiskeya customers in Orlando. On its face, the statements do not contradict because they are about two different topics. In addition, in its opposition response, Pals Group explains that it could not retain those customers *because* of the missing information, making the statements

11

actually consistent with one another. As mentioned previously, Defendants did not file a reply challenging that or any other explanation reconciling the various statements.

As such, the Court will not strike the second portion of paragraph 25 of Dupuy's declaration.

E.   *The Financial Report*

Defendants offer no factual basis or legal authority that would cause the Court to strike the financial report attached to Dupuy's declaration. The report itself is not a declaration or affidavit. Defendants do not point to any contradictory testimony given by the *expert* in this case that would warrant striking the report.

Thus, the Court will not strike the Pals Group's expert report.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on November 20, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record